PETE GRIFFITH, Appellee, v. NORWOOD WHITE COAL COMPANY, Appellant.

No. 45305.

NOVEMBER 19, 1940.

REHEARING DENIED MARCH 21, 1941.

F. H. Mackaman and T. S. Stevens, for appellant.

Havner, Flick & Powers, Margaret I. Cunningham, and Forrest L. Galpin, for appellee.

MILLER, J.—The defendant, Norwood White Coal Company, operates a deep vein mine in Dallas county. The face of the coal is a considerable distance from the shaft of the main entry to the mine. To facilitate the work of the mine and to enable the miners to reach the face of the coal and their working rooms, the company maintains a service called a "man trip" of extra cars, whereby the employees at the commencement of work each day are transported from the shaft to the various working rooms in the mine. Most of the cars so used accommodate six men. The men sit on the floor of the cars or on pieces of coal or on seats improvised by them from boards. When so seated, there is a clearance between the heads of the men and the roofs of the various entries through which they are hauled to their work. The rules of the company require the men to be so seated, although the record does show an occasional breach of this rule.

There is also a rule that only six men be permitted in one of these cars. This rule is ordinarily complied with. At times the company hires what is known as a "trip rider" to ride on a seat hung on the back of the rear car so that he is higher than the other men in the car, it being his duty to look forward, over the heads of the men, for the purpose of directing the movement of the train and notifying the motorman if anything goes wrong.

The claimant, Pete Griffith, was employed by the company as a miner, and, on the day in question, arrived at the bottom of the shaft when a man trip was ready to leave for the face of the coal, apparently loaded to its capacity of six men per car. Griffith, in violation of the rules of the company and without the knowledge or consent of the foreman in charge of the man trip, climbed on the end of the last car and was in a position where his body was higher than would have been the case had he used the method prescribed by the company of being seated in the car. There was no trip rider on this train. There was evidence that Griffith's position was substantially that of the trip rider. There is some conflict in the evidence on this point, but, for the purposes of this appeal, we must consider the evidence in the light most favorable to the claimant. After the man trip had proceeded a comparatively short distance, Griffith's head came in contact with a crossbar of the roof. By reason of this injury, he was awarded compensation for disability due to epilepsy, asserted to be of traumatic origin and caused by the injury.

I. Appellant asserts that the district court erred in affirming the award of the industrial commissioner "for the reason that the injuries were the direct and proximate result of the voluntary and wilful act of the claimant, in disregard of his duty and in violation of the rules of his employer, by assuming a position of danger which was in no respect incidental to his employment, wholly without causal connection therewith, received when he was performing no service for his employer, arose wholly outside of the sphere of his employment, at a place where he had no right to be, and did not therefore arise out of or in the course of his employment."

This court has repeatedly recognized that, for an employee to be entitled to workmen's compensation, he has the burden of proving that the disability for which he seeks compensation

is the result of an injury received in the course of his employment and arising out of the employment. Bushing v. Iowa R. & L. Co., 208 Iowa 1010, 1013, 226 N. W. 719, 721; Christensen v. Hauff Bros., 193 Iowa 1084, 188 N. W. 851; Griffith v. Cole Bros., 183 Iowa 415, 165 N. W. 577, L. R. A. 1918F 923; Enfield v. Certain-teed Prod. Co., 211 Iowa 1004, 1013, 233 N. W. 141, 145; Rish v. Iowa Portland Cement Co., 186 Iowa 443, 170 N. W. 532; Sparks v. Consolidated Ind. Coal Co., 195 Iowa 334, 190 N. W. 593; Kraft v. West Hotel Co., 193 Iowa 1288, 188 N. W. 870, 31 A. L. R. 1245; Wallace v. Rex Fuel Co., 216 Iowa 1239, 250 N. W. 589.

Appellant challenges the award by asserting that the injury of which Griffith complains did not arise out of his employment. Appellant relies upon our decisions in the cases of Enfield v. Certain-teed Prod. Co., supra; Kraft v. West Hotel Co., supra; Christensen v. Hauff Bros., supra. These cases do not require a reversal of the award made herein.

In Christensen v. Hauff Bros., supra, the employee was sent to a neighboring town by his employer and was furnished railroad transportation to and from such place. In undertaking to make the return trip, he attempted to board a moving freight train. Instead of waiting for the caboose, he undertook to climb upon a moving flat car. His attempt was unsuccessful. He fell and was fatally injured. In holding that the injuries so received did not arise out of the employment, we state (193 Iowa 1084, at page 1091, 188 N. W. 851, at page 854) as follows:

"We do not think that Christensen, in his attempt to throw himself upon the flat car, without any standards or projections to take hold of, was doing a thing occasioned by the nature of his employment; and therefore such act and consequent injury could not be said to arise out of his employment. There was no justification for Christensen's attempt to board the freight train by mounting the flat car in a most unusual manner, and for reasons wholly unjustifiable. In attempting to jump onto the flat car, he was not at a place where he might reasonably be, doing what a man so employed might reasonably do. We cannot conceive that Christensen's employment contemplated or comprehended any such unusual and rash act."

In the case of Kraft v. West Hotel Co., supra, the employee was a chambermaid for the defendant hotel company. Her injury was received on the premises, but after working hours. She attempted to curl her hair with a lamp. In the course of this undertaking, she was severely burned. In holding that compensation was properly denied, we state (193 Iowa 1288, at page 1293, 188 N. W. 870, at page 872) as follows:

"An accident cannot be said to arise out of the employment when it is due to a new and added peril to which the employee by his own conduct has needlessly exposed himself. The act in question was expressly forbidden by the master and it was a matter that did not concern either him or his business."

In the case of Enfield v. Certain-teed Prod. Co., supra, the employee was chief engineer for the employer and with his helper had undertaken to repair an electric motor. They undertook to transport it from the first floor to the second floor on an elevator which claimant was prohibited to use. In stating claimant's contention, we state (211 Iowa 1004, at page 1007, 233 N. W. 141, at page 142) as follows:

"Claimant's theory of the case is that he was doing the employer's work, and used the elevator in order to keep the motor from upsetting, there being no convenient way of fastening the same to the truck and the elevator platform. Haste was necessary, claimant maintains, in order to repair the motor, so that it could be installed in running order not later than 7 o'clock P. M. So, the claimant concludes, his action in the premises, even if wrongful, amounted only to contributory negligence, and therefore is no bar to his recovery of compensation."

In holding that the injury did not arise out of the employment, we state (211 Iowa 1004, at page 1016, 233 N. W. 141, at page 146) as follows:

"A sufficient answer to claimant's proposition is that he, at the time of his injury, was acting outside of his employment, because the moving elevator was not a place where he might reasonably be. Also, when the claimant was riding on the elevator, he was not doing what a man 'so employed' might

reasonably do. Those distinguishing features raise the claimant out of the realm of ordinary negligence, and place him in a position where his alleged injury did not arise in the course of his employment. Forsooth, claimant took himself out of the course 'of his employment' by stepping into a place forbidden by the master and not contemplated by the employment contract.''

Appellant also relies upon the statement in Workmen's Compensation Insurance by Clarence W. Hobbs, at page 208, to wit:

''Where the employee is injured because of some act that is a breach of his duty as employee, he is acting outside his employment, and the injury cannot be said to arise out of the employment. * * * if he wantonly violates a law or does an unlawful act, if he willfully refuses to comply with the employer's rules and regulations or with the orders of those set to superintend him, if he does unauthorized work or neglects the employer's work to attend to his own affairs, if he wantonly and recklessly places himself in a position of peril not required by his work—in all these cases an injury sustained thereby does not in any proper sense arise out of the employment * * *.''

We have no quarrel with the rule announced by the authorities upon which appellant relies. We are in accord with the rule, but we cannot agree that it applies under the record herein. For the rule to be applicable, the employee must be at a place where he would not reasonably be expected to be in the course of his employment or must willfully do some act which creates a new and added peril to which his employment cannot reasonably be said to have exposed him. Mere negligence is not enough. Wallace v. Rex Fuel Co., supra.

Here Griffith was clearly negligent. He knew that his position required a careful lookout on his part. In describing the accident, he says that he forgot to ''duck''. The industrial commissioner found that he was guilty of negligence. With this we agree. But the industrial commissioner also found that his misconduct amounted only to negligence and nothing more. With this we also agree. Griffith had a right to be on the man trip. It was operated for the benefit of him and his fellow workers.

His misconduct consisted in boarding a car in which six men were already seated and taking a position wherein his body was more elevated than that of the other men. However, in view of the fact that there is substantial evidence to the effect that Griffith's position on the rear of the car was substantially that of the trip rider, when there was one, we cannot say that the undisputed record is such as to warrant our holding, as a matter of law, that Griffith's act in taking the position customarily taken by the trip rider on the man trip created a new and added peril to which he needlessly exposed himself and, therefore, by his rash conduct took himself out of the course of his employment so that the injury which resulted cannot be said to have arisen out of his employment. Accordingly, we are of the opinion and hold that there is no merit in appellant's contention in this regard.

Appellant urges that, where an injury is received by a workman and at the time of the injury he is not doing any act of service for the employer, such injury so received will not arise out of the employment unless it be due to some act or fault of the employer. We do not so interpret our decisions. We find no case where workmen's compensation was ever denied on such a theory. In a number of instances, compensation should have been denied if such were the law. Rish v. Iowa Portland Cement Co., supra; American Bridge Co. v. Funk, 187 Iowa 397, 173 N. W. 119; Sachleben v. Gjellefald Const. Co., 228 Iowa 152, 290 N. W. 48. The rule in such a case is that the injury arises out of the employment if it can reasonably be said to result from a hazard of the employment. Where as here the workman is on the premises and is injured as a result of a hazard reasonably attributable to his presence on the premises, the injury arises out of the employment unless the employee has done some act which takes him out of the sphere of his employment. We find no merit in appellant's contention.

II. One of the grounds for the appeal to the district court was stated as follows:

"The decision and award was procured by fraud in that the claimant knowingly presented perjured testimony as to material facts and intentionally concealed from the Commissioner material facts, all with the intent of and with the result of defrauding and deceiving the Commissioner."

Upon the trial of the case before the district court, appellant offered to prove that the testimony of the claimant and many of his witnesses to the effect that Griffith had not had epileptic fits prior to the injury was false, untrue and deliberate perjury. The court refused to permit the evidence to be introduced, holding that the evidence related to matters which should be presented to the industrial commissioner. Appellant asserts that this ruling was erroneous "for the reason that appellant had an absolute right as a matter of law to make such proof." We find no merit in this contention.

Section 1452 of the Code, 1939, provides as follows:

"The transcript as certified and filed by the industrial commissioner shall be the record on which the appeal shall be heard, and no additional evidence shall be heard. In the absence of fraud the findings of fact made by the industrial commissioner within his powers shall be conclusive."

Section 1453 of the Code, 1939, provides as follows:

"Any order or decision of the industrial commissioner may be modified, reversed, or set aside on one or more of the following grounds and on no other: 1. If the commissioner acted without or in excess of his powers. 2. If the order or decree was procured by fraud. 3. If the facts found by the commissioner do not support the order or decree. 4. If there is not sufficient competent evidence in the record to warrant the making of the order or decision."

We are unable to find that the precise question now presented by appellant has ever been passed upon by this court. However, in the case of Muncy v. Muncy, 242 Ky. 190, 193, 45 S. W. 2d 1034, 1036, the court states:

"The review of the circuit court is limited to determining whether or not (1) the board acted within, or in excess of, its powers; (2) the order, decision, or award was procured by fraud; (3) the order, decision, or award is not in conformity with the provision of the act; (4) if findings of fact are in issue whether such findings of fact support the order, decision, or award. Unless there be fraud or misconduct of some person engaged in the administration of the act, the case is heard on

the record as certified by the board, and no new nor additional evidence may be introduced.''

From the foregoing statement, it is readily apparent that the statute construed by the Kentucky court was substantially identical with the statute we are now called upon to construe. We are of the opinion that our statute should have the same construction. Section 1452 makes the industrial commissioner the sole judge of the credibility of the witnesses and gives him exclusive power to determine the facts where the evidence is in conflict. We have so repeatedly recognized this that the citation of authorities would be superfluous. The evidence which the appellant undertook to present to the district court would raise a conflict with the evidence of claimant's witnesses introduced before the industrial commissioner. The industrial commissioner and not the district court had the power to pass upon the credibility of the testimony and to find the facts.

If the fraud claimed was fraud on the part of the industrial commissioner, or anyone engaged in the administration of the act, then a different situation would be present. The industrial commissioner would not have the exclusive right to pass upon that question and the party against whom the fraud was practiced certainly could not be limited to the record made before the person who is charged with the fraud. But the situation before us is entirely different. The contention of appellant appears to be unreasonable and impractical. The district court has no right to make a finding of fact where the evidence in regard thereto is in conflict. This is the exclusive function of the industrial commissioner. Since the industrial commissioner has that exclusive function, the evidence should be submitted to him, not to the district court.

Counsel on both sides have argued quite extensively the mechanics of presenting this evidence to the industrial commissioner. We do not undertake to discuss or decide such question. No attempt was made to present this evidence to the industrial commissioner. The only offer made in regard to it was to the district court. The only question presented by this appeal is whether or not the district court should have entertained it. On this question we hold that the court properly refused to entertain this offer of proof.

III. Appellee has filed a motion to dismiss the appeal, asserting that the notice of appeal was not served in time. The appeal, being taken from a judgment of the district court, must be taken within the time fixed by section 12832 of the Code, 1939, which provides as follows:

"Appeals from the district, superior, and municipal courts may be taken to the supreme court at any time within four months except as hereafter provided from the date of the entry of record of the judgment or order appealed from, and not afterwards; * * *."

The notice of appeal was served and filed within the four months period above specified. However, appellee contends that section 1456 of the Code, 1939, limits the time for appeal in workmen's compensation cases to the 60 days allowed for an appeal in criminal cases by section 13995 of the Code, 1939. Said section 1456 reads as follows:

"An appeal may be taken to the supreme court from any final order, judgment, or decree of the district court, but such appeal shall be docketed, placed upon the term calendar, and submitted in the same time and manner as criminal cases in said court."

To construe the above statute in accordance with appellee's contention would in effect make it read as follows:

"Such appeal shall be *taken*, docketed, placed upon the term calendar, and submitted in the same time and manner as criminal cases in said court."

If the word "taken" is to be so inserted, the legislature must insert it. We cannot do so under the guise of construing this section. The motion to dismiss is overruled.

Since we find no merit in appellant's contentions, the judgment is affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.