BESSIE CROWE, appellee, v. DESOTO CONSOLIDATED SCHOOL DIS-
TRICT and ST. PAUL-MERCURY INDEMNITY COMPANY
of St. Paul, Minnesota, appellants.

No. 48606.

(Reported in 68 N.W.2d 63)

January 12, 1955.

Hoffmann & Hoffmann, of Des Moines, for appellants.

Doran, Doran, Doran & Erbe, of Boone, for appellee.

LARSON, J.—The claimant, Bessie Crowe, a teacher in the DeSoto Consolidated School, sustained a hip fracture on December 19, 1952, as a result of a fall upon an icy roadway adjoining the school district property, while she was attempting to walk about two blocks from the school to observe the condition of Highway 169. She made claim under the Iowa Workmen's Compensation law alleging the injury was one that arose out of and in the course of her employment. The defendants denied the allegation and maintained she had abandoned her employment, was on a journey of her own, and that she was outside the course of her employment when the injury occurred. The matter was presented to the deputy commissioner and determined in claimant's favor. The commissioner's affirmance of that decision was upheld by the district court, and it is now before us for review. The sole question in this appeal is whether, under the facts presented, the injury was one that arose out of and in the course of claimant's employment.

Briefly, the testimony discloses that plaintiff is a teacher, sixty-two years of age, who has been employed by the defendant DeSoto Consolidated School District for over thirty years. Her home was in Boone, Iowa, but she maintained a room in DeSoto, where she stayed during the school week. On Friday, December 19, 1952, she drove her car some five or six blocks to school as usual and entered into the performance of her duties as teacher. During that morning a sleet storm developed and it was decided by the authorities that school should be dismissed at 1 p.m. and the Christmas program scheduled for that evening canceled. The busses were called to transport the rural children to their homes and they departed between 1:05 and 1:10 p.m. The usual hour of departure was 4 p.m., but it was feared that by that time the roads would be too bad to permit safe travel. Although the teachers were permitted to leave also, several teachers and some town children remained about the premises after the busses left. The plaintiff and Mrs. Johnson, another teacher, were among these, and shortly after the busses departed they decided to go

out and investigate the condition of the main highway over which the busses traveled. This they said was for two reasons: (1) to discover whether or not the children on the school busses would be able to travel safely to their homes, or would need to be returned to the school; and (2) to decide whether or not it would be safe for them to start for their homes in their automobiles. Mrs. Johnson said: "We were concerned with the children getting home on the icy roads. * * * We were going to check on the roads * * * to see that the students had started * * *" and "to make sure that the roads were safe for us to travel." Miss Crowe said: "I wanted to see if the busses had got out" and "to see what the roads looked like." She said Mrs. Johnson "suggested we go out and see that the busses got started down the highway and we would look at the roads." The highway of particular concern, 169, ran north and south about two blocks west of the school property, and to the south was hidden by trees and brush. It was reached by a county gravel road which had also become icy and slick. Shortly after the teachers had started down this road, the plaintiff became frightened and turned back. She had taken only a few return steps when she fell, fracturing her hip. She was carried into the school building on an improvised stretcher and later taken to the Boone hospital where she was confined and treated for a considerable time. While she was there, defendants' counsel took a statement from her which was introduced in evidence and which defendants contend shows the venture from the building was solely for plaintiff's own purpose and was not connected with any duty to or purpose of her employer. Her statement given stated Mrs. Johnson "walked out with me to see whether the highway was drivable." However, the testimony given by the claimant and Mrs. Johnson before the commissioner, herein set out, clearly shows the dual purpose of the venture and justified the commissioner in so finding.

 I. Under these conditions, was the injury one that arose out of and in the course of the plaintiff's employment? It is well settled that the words "arising out of" and the words "in the course of" are used conjunctively, and so both conditions must exist to bring the case within the statute. Section 85.1, Code of 1954; Walker v. Speeder Mach. Corp., 213 Iowa 1134,

240 N.W. 725; Pace v. Appanoose County, 184 Iowa 498, 505, 168 N.W. 916; Christensen v. Hauff Bros., 193 Iowa 1084, 188 N.W. 851. It is also well settled that the words "out of" point to the cause or source of the accident, and "in the course of" relate to the time and place and circumstances of the injury. Yates v. Humphrey, 218 Iowa 792, 255 N.W. 639; Daniel v. Murray Corp. of America, 326 Mich. 1, 39 N.W.2d 229. Obviously the cause or source of the accident here was the venture from the school building to investigate the road conditions. Whether it was in the course of her employment then depends upon the time, place and circumstances. The test, we have said, seems to be whether claimant was doing what a person so employed may reasonably do within a time during which she is employed, and at a place where she may reasonably be during that time. Yates v. Humphrey and Christensen v. Hauff Bros., both supra; Enfield v. The Certain-Teed Prod. Co., 211 Iowa 1004, 233 N.W. 141; Bushing v. Iowa Railway & Light Co., 208 Iowa 1010, 226 N.W. 719.

As so often occurs in matters of this kind, we have a general mixture of questions of fact and law. It is somewhat difficult to distinguish them so as to state which findings of the commissioner are binding upon the court and which are for the court's determination as questions of law. The rule is clear but its application difficult because as here several inquiries involve both questions of law and fact. Here we must pass anew on the law question and determine whether there is substantial support for the commissioner's finding of fact. Pribyl v. Standard Electric Co., 246 Iowa 333, 67 N.W.2d 438.

It is true the claimant in such matters must establish by a preponderance of the evidence that the venture was for the benefit or in the interest of her employer, and did not amount to an abandonment of her employment, to enable her to recover under the Workmen's Compensation Act. Ordinarily this is a fact question and under our Iowa statutes is for the commissioner to say whether claimant carried her burden. After his findings on such fact question, it cannot be interfered with on appeal unless there is not sufficient material or competent evidence in the record to warrant it. Enfield v. The Certain-Teed Prod. Co., supra; Flint v. City of Eldon, 191 Iowa 845, 183

N.W. 344; Hinrichs v. Davenport Locomotive Works, 203 Iowa 1395, 214 N.W. 585; Jones v. Eppley Hotels Co., 208 Iowa 1281, 227 N.W. 153. Here we agree with the trial court in approving the commissioner's finding that in her venture from the school premises plaintiff did not abandon her employment and was not on a mission solely for her own benefit, unless it must be said any departure from the school premises by a teacher at any time is beyond the scope of her employment and therefore beyond coverage. We know of no such rule, and so again the trial court was correct in holding there are no such narrow restrictions upon this employee. Mr. Chase, the superintendent, said "all teachers have playground assignments and help with various school activities." We find no express restrictions on the teacher's judgment or a denial of discretion to her in performing her various tasks. Such a concept would be startling indeed to the profession.

We said in Bushing v. Iowa Railway & Light Co., supra, 208 Iowa 1010, at 1017, 226 N.W. 719, 722: "The employee is not a mere automaton or machine set down in a particular place and required to stay there. His comfort and safety and the *employer's interests* are, to a greater or less degree, committed to the judgment of the employee. Under the instant facts, there is no evidence of a total departure from the course of the employment, nor an abandonment of his work by the employee." (Emphasis ours.)

We also said therein, at page 1018 of 208 Iowa, page 723 of 226 N.W.: "An injury occurs in the course of the employment when it is within the period of the employment, at a place where the employee reasonably may be in performing his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto."

The employee's departure from the usual place of employment must amount to an abandonment of employment or be an act wholly foreign to his usual work. Shoffler v. Lehigh Valley Coal Co., 290 Pa. 480, 139 A. 192; Von Ette's Case, 223 Mass. 56, 111 N.E. 696, L. R. A. 1916D 641.

But an employee does not cease to be in the course of his employment merely because he is not actually engaged in

doing some specifically prescribed task, if, in the course of his employment, he does some act which he deems necessary for the benefit or interest of his employer. Associated Employers' Reciprocal v. State Industrial Comm., 82 Okla. 229, 200 P. 174; McCrary v. Wolff, 109 Neb. 796, 192 N.W. 237. In the matter before us, the teachers clearly intended to return to the school building before leaving for their homes. Their books and papers which they usually took home over the week end were still in the school building. Miss Crowe said: "I was going to get some work to take home because I thought I was going to have to stay in DeSoto that evening." Mrs. Johnson said: "Everything I had was left in the building. I intended to go back." This evidence of those facts was sufficient so that the real nub of this controversy is whether or not plaintiff was then performing a contemplated service or one incident to her employment as a schoolteacher. Did the plaintiff owe her employers any duty which would justify that venture from the school, and for her to assume risks not ordinarily contemplated in such an occupation? We cannot say as a matter of law that she did not.

As heretofore pointed out, we find no restrictions on teachers' judgment or discretion as to their acts for the welfare of the children and, in fact, their relationship as employees of the school district with the children abhors such a concept. It is true there must be a causal connection between the conditions which the employer puts about the employee and the resulting injury. But if it reasonably appears from all the facts and circumstances there is a causal connection, liability generally follows. The trial court said, and we agree:

"It is clear that the job of teaching school is not one where a time clock is punched, and much has been said about the duties and responsibilities of a schoolteacher not only to the children, their education, their health, their welfare, but responsibilities to become a part of and take part in the activities of the community where they are employed."

Good teachers are concerned over the welfare of their students. They are second only to the parent in concern over the child's welfare, and communities expect nothing less. They often, as was planned here, stay at or return to the schoolhouse

at night for plays, games and other school activities, rendering many other services to the students and the community beyond that of mere classroom instruction. It is expected, if not actually required of such teachers, by most employer school districts. Plaintiff explained her interest in the busses as follows: "Well, I have an interest in them while the children are in them, to know whether they get home." Mrs. Johnson said: "We are always interested in what the children are doing—children arriving and getting home safely, to school safely, is always my interest."

While it is true, as urged by defendants, that these teachers were not, as a part of their regular duties, responsible for the loading of the busses or the transportation of the children, yet if the children had been returned to the school by the bus drivers after an unsuccessful attempt to negotiate the highway, who would say it was not the teachers' duty to look after and supervise the children until they could have been taken home? Who would contend they would not have done so? It is not at all surprising or unusual for teachers to be concerned over the children's safety, and it was perhaps contemplated here that in fulfilling their duty of looking after and caring for the children, such tasks as the teachers were then performing were reasonably contemplated as incidental. Walker v. Speeder Mach. Corp., supra, 213 Iowa 1134, 240 N.W. 725.

It is true unless a relationship of duty and injury exists no recovery is possible, and if it were conceded that the trip was made only to discover whether or not the teachers might safely travel, abandonment of the occupation would result and no recovery would be possible. Pohler v. T. W. Snow Constr. Co., 239 Iowa 1018, 33 N.W.2d 416. On the other hand none would say that had these teachers left the school premises to aid children hurt in an off-the-premises overturned bus, and in that endeavor had themselves been injured, they were not performing a contemplated service and would not be entitled to recover. The risk or hazard in such departure from school premises while performing a special service for the employer does not seem to be unreasonable nor unjust. It must simply be one reasonably incidental to the employment. Yates v. Humphrey, supra, 218 Iowa 792, 255 N.W. 639, and cases cited therein;

Christensen v. Hauff Bros., supra, 193 Iowa 1084, 188 N.W. 851. These teachers had reasonable grounds for believing and they understood that their work was not limited strictly to the performance of specific duties such as teaching arithmetic, history, etc. We said in Pace v. Appanoose County, supra, 184 Iowa 498, 168 N.W. 916, the test in determining whether the injury has arisen in the course of employment is whether the injured party was doing what a person so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time. Of course if the accident does not occur "in the course of" it cannot arise "out of" the employment.

The trial court agreed with the commissioner's finding that plaintiff had met the test and that she was in a place where she reasonably might have been in the performance of her duty as a teacher, that she had not abandoned her employment at the time, and was therefore entitled to recover, as having suffered an injury arising out of and in the course of her employment. We agree.

The plaintiff's acts were reasonably found to have been on behalf of the employer school district whose business it was to transport, teach and care for the general welfare of the children while away to school. We are satisfied there was a direct causal connection between plaintiff's injury and the general and incidental requirements or duties contemplated by her employer— understood if not expressed—and that her injury "arose out of her employment."

II. The employer of course is not an insurer of the safety of the employee. Any time the employee steps aside from the line of duty in the employment or violates a rule or restriction by departing from the course of his employment, compensation coverage ceases. Pohler v. T. W. Snow Constr. Co., supra, 239 Iowa 1018, at 1029, 33 N.W.2d 416; Walker v. Speeder Mach. Corp., supra, 213 Iowa 1134, 240 N.W. 725; Enfield v. The Certain-Teed Prod. Co., supra, 211 Iowa 1004, 233 N.W. 141; Callaghan v. Brown, 218 Minn. 440, 16 N.W.2d 317; Stocker v. Southfield Co., 244 Mich. 13, 221 N.W. 175; Gifford v. T. G. Patterson, Inc., 222 N. Y. 4, 117 N.E. 946, 6 A. L. R. 576;

Mueller Constr. Co. v. Industrial Board, 283 Ill. 148, 118 N.E. 1028, L. R. A. 1918F 891, Ann. Cas. 1918E 808. Such, however, is not the case before us. No orders were disobeyed; her business on the road was not for herself alone, and she had not abandoned her duty or her employment at the time of the injury. She was pursuing her employer's interest and business of looking after the welfare of the children. Her playground supervision duties indicate somewhat the fact her incidental duties extended beyond the classroom and the assemblies. How far beyond depends of course upon the facts and circumstances of each case. We are satisfied they extended here to cover the task these teachers were attempting to perform.

█ III. It seems unnecessary to include herein the statement that the workmen's compensation statute is to be liberally construed so as to get within the spirit rather than only within the letter of the law. Bidwell Coal Co. v. Davidson, 187 Iowa 809, 174 N.W. 592, 8 A. L. R. 1058, and cases cited therein. This law is remedial and is to be given a broad and liberal construction. The rule is universal and applies in all jurisdictions. See Rish v. Iowa Portland Cement Co., 186 Iowa 443, 170 N.W. 532, and cases cited therein. No further comment is needed except to say here that to restrict compensability for teachers to the duties called for in their contracts only, or in classroom teaching or supervising during school hours only, would be to exclude them from coverage in many well-known incidental activities and would be unconscionably and unreasonably restrictive. Such construction would not be a liberal construction as contemplated by the legislature in the passage of this Act.

█ In conclusion, we find no merit in the defendants' three listed trial court errors. We hold the evidence was sufficient to justify a finding by the commissioner that the accident did arise out of the employment, that the facts and circumstances shown justify the determination by the commissioner that the accident did arise in the course of the employment, and that there was a causal connection between the duty the plaintiff was performing and the injury such as to justify her recovery.

Plaintiff met the test and has shown satisfactorily that she was doing what a teacher so employed may reasonably do within a time during which she is employed, and at a place where she

may reasonably be during that time. Christensen v. Hauff Bros., supra, 193 Iowa 1084, 188 N.W. 851; Bryant v. Fissell, 84 N. J. L. 72, 86 A. 458.

As there was no contest as to the reasonableness or correctness of the commissioner's finding as to the award if liability were found to exist, we hold the award of the commissioner as decreed in favor of the plaintiff by the trial court must be affirmed.—Affirmed.

All JUSTICES concur.